Eugene B. VIA, Petitioner,

v.

C. C. PEYTON, Superintendent, Virginia
State Penitentiary, Respondent.

Civ. A. No. 67–C–28–H.

United States District Court
W. D. Virginia,
Harrisonburg Division.

May 24, 1968.

**962**

Overton P. Pollard, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court upon a petition for a writ of habeas corpus filed in forma pauperis by Eugene B. Via, a state prisoner, pursuant to the provisions of 28 U.S.C. § 2241.

The petitioner attacks the constitutional validity of a series of convictions imposed in five different state courts. The allegedly invalid convictions, pursuant to which a total term of 52 years and 9 months was imposed, are as follows:

(1) April 5, 1962, Corporation Court for the City of Staunton, two charges of statutory burglary and larceny.

(2) April 16, 1962, Circuit Court of Rockingham County, one charge of statutory burglary and larceny, two charges of statutory burglary and grand larceny.

(3) April 24, 1962, Circuit Court of Amherst County, one charge of statutory burglary and larceny.

(4) May 14, 1962, Circuit Court of Waynesboro, four charges of statutory burglary, two charges of statutory burglary and larceny, three charges of statutory burglary and grand larceny, one charge of possession of burglary tools.

(5) May 28, 1962, Circuit Court of Nelson County, one charge of statutory burglary and larceny.

(6) June 11, 1962, Circuit Court of Amherst County, one charge of malicious wounding one charge of escape.

The sentences imposed pursuant to these convictions are all future sentences in that petitioner will not begin to serve the first of them until October 27, 1968. At that time the sentence he is presently serving, and the validity of which he does question, is scheduled to expire. No appeal was taken to the Virginia Supreme Court of Appeals for any of these convictions, nor were any of them the subject of collateral attack in state habeas corpus proceedings.

■ ■ Federal habeas corpus is available to prisoners attacking allegedly invalid state sentences to be served in the future. Rowe v. Peyton, 383 F.2d 709 (4th Cir.1967), cert. granted 389 U.S. 1035, 88 S.Ct. 782, 19 L.Ed.2d 822 (1968). State prisoners seeking to attack future sentences have no effective remedy in the courts of Virginia, Rowe v. Peyton, supra 383 F.2d at 711, and are not required to exhaust state remedies where there are circumstances which make resort to such remedies inefective and futile. 28 U.S.C. § 2254, Evans v. Cunningham, 335 F.2d 491 (4th Cir.1964). Thus, it is appropriate at this time for the court to exercise its jurisdiction of the petitioner's case.

The following facts will serve to put petitioner's case in proper perspective:

On February 6, 1962 petitioner was arrested by officers of the Waynesboro Police Department while on the premises of a Waynesboro motel. While in the custody of Waynesboro and Augusta County authorities he divulged information concerning a series of property offenses committed over a period of several years. This disclosure led to his prosecution and conviction in all of the courts mentioned above with the exception of the conviction in the Circuit Court of Amherst County for malicious

wounding and escape. In all of these proceedings petitioner was represented by court appointed counsel, and in all of them he entered a plea of guilty.

The petitioner now challenges the constitutional validity of the convictions imposed by the above mentioned courts on various grounds. On March 30, 1968 this court held a plenary hearing in order to take evidence on the petitioner's allegations. Petitioner was present at the hearing and was ably represented by two Harrisonburg attorneys, Mr. W. W. Wharton and Mr. P. R. Graves, Jr. Numerous witnesses were called and much testimony was given. After due consideration of the law and the evidence offered at the hearing, the court has concluded that, for the reasons to be stated below, the petititioner's charges are totally without merit.

### The Staunton Conviction

■ The petitioner attacks the conviction imposed by the Corporation Court for the City of Staunton on the grounds that he was denied his constitutional right to a public trial.[1] At the hearing Mrs. Edith H. Paxton, Clerk of the Corporation Court for the City of Staunton, testified that at the time of petitioner's conviction in 1962 it was "not unusual" for cases to be tried in the chambers of Judge Harrison May. According to Mrs. Paxton, the judge's chambers, located on the first floor of the City Hall Building, would be used for trials when the official courtroom, located on the second floor of that building, was rendered unserviceable because of inadequate heating facilities. Mrs. Paxton further testified that whenever trials were conducted in the chambers a sergeant was sent upstairs to see if witnesses or lawyers were present in the courtroom and that the door to the judge's office was left open "at all times." The petition, however, avers that "When this office was used by the

---

1. The right to a public trial guaranteed in federal criminal trials by the Sixth Amendment is made applicable to state criminal trials through the due process clause of the Fourteenth Amendment. In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

Court (sic) it was the established practice that no person would be permitted to enter while court was in session."

■ The decisive factor in determining whether a state prisoner has been denied his right to a "public trial" is whether the public was excluded from the proceedings. Lewis v. Peyton, 352 F.2d 791 (4th Cir.1955); Jones v. Peyton, 208 Va. 378, 158 S.E.2d 179 (1967). As the Virginia high court said in the *Jones* decision:

> Whether an accused has been deprived of his constitutional right to a public trial by holding it * * * other than in an "open courtroom" depends upon whether the public had freedom of access. * * * It has been held that a trial in the judge's chambers did not constitute a denial of a public trial where there was no exclusion of the public or where there was no affirmative proof in the record that the public had been excluded.

208 Va. at 380, 158 S.E.2d at 181 (citations omitted).

■■ Certainly there is no such affirmative proof in the record before us. Other than his own unsupported allegation, the petitioner has offered no evidence that the public was excluded from this trial in Judge May's chambers. It is, of course, well settled that a petitioner on habeas corpus has the burden of proving a denial of his constitutional rights by a preponderance of the evidence. Johnson v. Zerbst, 304 U.S. 458, 469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937); Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941). In the light of the positive testimony of Mrs. Paxton that the door to the judge's chambers remained open "at all times", it is obvious that the petitioner has failed to sustain that burden, and his charge that the Staunton conviction was unconstitutionally imposed is accordingly rejected.

### The Amherst County Conviction of June 11, 1962

The petitioner attacks the Amherst County conviction of June 11, 1962 on the grounds that he was denied his constitutional right to the effective assistance of counsel and that his plea of guilty to charges of escape and malicious wounding was coerced.

Turning to the first allegation, petitioner claims that his court appointed counsel gave his case inadequate attention. It is clear that Mr. Thomas L. Phillips was not appointed to represent petitioner until the day of trial. However, Mr. Phillips testified that immediately upon his appointment he conferred with petitioner who "readily admitted" to him his escape from the Amherst County jail and his assault upon the jailer, Mr. Van S. Miller. Mr. Phillips further testified that he conferred with Mr. Miller who was present in court and willing to testify that he had been enticed by petitioner into a cell block and struck between his eyes with a set of keys. Mr. Phillips also conferred with members of the local police force and the Commonwealth's Attorney, from whom he was able to procure a recommended sentence of fifty per cent of the maximum for the two offenses. When asked on the basis of his investigation what chance he thought the petitioner would have had of prevailing on a plea of not guilty, Mr. Phillips replied, "none whatsoever". He substantiated this opinion by explaining that the jailer was well known in the community and was a slight elderly man who had been "viciously assaulted."

■ The principles by which adequacy of representation is to be determined have been clearly articulated in the decisions of the Fourth Circuit. In Jones v. Cunningham, 313 F.2d 347, 353 (4th Cir.1963) the court stated this standard for determining whether adequate representation has been afforded:

> Of course, it is not for a lawyer to fabricate defenses, but he does have an affirmative obligation to make suitable inquiry to determine whether valid ones exist. Such a duty is imposed for the salutary reason that '[p]rior to trial an accused is entitled to rely upon his counsel to make an

independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.' Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948).

Speaking more specifically to the problem of late appointment of counsel, the Fourth Circuit has made it clear that the practice of appointing counsel in a felony case so close to trial that the lawyer is not afforded a reasonable opportunity to investigate and prepare a case is inherently prejudicial and a mere showing of the late appointment of counsel constitutes a *prima facie* case of denial of effective assistance of counsel so that the burden of proving lack of prejudice is shifted to the state. Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967); Fields v. Peyton, 375 F.2d 624 (4th Cir.1967). However, as was pointed out in *Twiford*, 372 F.2d at 67, effective representation is not denied notwithstanding the late time of appointment or lack of preparation of counsel where the record shows affirmatively that an accused was not prejudiced thereby. See, e. g., Braxton v. Peyton, 365 F.2d 563 (4th Cir.1966); Turner v. State of Maryland, 318 F.2d 852 (4th Cir.1963).

Mr. Phillips' testimony establishes to our satisfaction that petitioner's case was not prejudiced by the late time of his appointment because it demonstrates beyond a doubt that the accused in fact had no valid defense which could have been afforded to the two relatively simple charges. The petitioner readily acknowledged his guilt to the charges, and the victim of his assault and witness to his escape was in court and willing to testify for the prosecution. Moreover, the petitioner has made no suggestion, either at the hearing before this court or in the petition itself, that he had any information which could have been used in his defense or in mitigation of his sentence. In these circumstances there is no ground for saying that the legal representation afforded petitioner was so perfunctory as to be deemed inadequate. See Braxton v. Peyton, supra; Turner v. State of Maryland, supra.

The petitioner's charge that his plea of guilty was "coerced" is apparently predicated on the fact that, as stated in the petition, "[P]etitioner was advised by counsel that his version of the incidents would not be believed and to contest the charge would only enhance the term of imprisonment that would be imposed." Mr. Phillips testified that, in substance, he did so advise the petitioner. We do not think that this advice was improper under the circumstances of this case. The fact that counsel expresses the belief that a plea of guilty would result in a lighter sentence is not professionally improper, nor is it ground for collateral relief absent evidence that the prosecution had a part in arousing the expectation of leniency. United States v. Baysden, 326 F.2d 629, 631, n. 3 (4th Cir.1964). Certainly there is no such evidence here.

### The Remaining Convictions

The petitioner attacks his convictions in the courts of Nelson County, Amherst County (April 24, 1962), Rockingham County and the City of Waynesboro on three separate grounds:

(1) In each case his guilty plea was the product of a coerced confession and of evidence obtained by an unlawful search and seizure.

(2) In each case his guilty plea was "itself coerced."

(3) In each case he was denied his constitutional right to the effective assistance of counsel.

### I

In support of his first argument the petitioner alleges that after his arrest on February 6, 1962, the Sheriff of Augusta County removed from his house trailer various items of property without first procuring a search warrant. Petitioner alleges that he was then confronted with this property and asked to admit that it was stolen. "For a long time,"

the petition states, "petitioner denied that the property was stolen but after being informed that his wife was going to be arrested for having the stolen property in her possession the petitioner then to save his wife from arrest and confinement admitted the property had been stolen by him." After the admission was obtained, petitioner alleges that he was questioned about other unsolved burglaries and further admissions were obtained from him. The petitioner contends that the guilty pleas entered in each of the above mentioned courts were involuntary and therefore invalid because they were the direct product of his first confession, a confession extorted, he maintains, by the unconstitutional conduct of state officers.

 If, as alleged, petitioner's constitutional rights were violated by the illegal conduct of state officials, we would not hestitate to hold that a plea of guilty motivated by such conduct was not freely and voluntarily made. Hipp v. Warden, Maryland State Penitentiary, No. 9671 (4th Cir.1964) (memorandum opinion). As was stated in Doran v. Wilson, 369 F.2d 505 (9th Cir.1966), "a guilty plea must not be a product of violation of fundamental constitutional rights." However, the testimony given at the habeas corpus hearing held by this court clearly reveals that none of petitioner's constitutional rights were in fact violated.

Mr. John E. Kent, Sheriff of Augusta County, testified that he was present at the Waynesboro Police Station when petitioner acknowledged that there were numerous stolen articles in his house trailer. On the basis of various articles specifically enumerated by the petitioner, Sheriff Kent procured a search warrant, a copy of which was introduced into evidence by the respondent. According to Sheriff Kent, the warrant was executed on petitioner's wife before the search which led to the recovery of numerous articles of stolen property was performed. Sheriff Kent also testified that he later talked with petitioner in Staunton and that he made several statements about breaking and entering offenses in Augusta and other counties. Sheriff Kent denied that any threats or promises were ever made to the petitioner, and when asked if he or anyone in his presence ever told the petitioner that he did not plead guilty his wife would be implicated in the charges against him, Sheriff Kent replied, "I did not tell him this and did not hear anyone else."

Captain J. S. Whitlock, a police officer of twenty years experience with the Waynesboro Police Force at the time of petitioner's arrest, also denied that any threats or promises were ever made to the petitioner and stated that he had no knowledge of any mention ever being made of the possible involvement of the petitioner's wife in the charges against him. When asked about the search which led to the discovery of various burglary tools in petitioner's car, Captain Whitlock testified that the petitioner gave him permission to search the car and then personally unlocked the trunk for him. In response to the allegation that the Waynesboro police confiscated all of petitioner's money, Captain Whitlock testified that the one-hundred dollars taken from the Waynesboro motel was in fact confiscated and returned while the balance of petitioner's funds was turned over to his wife at his request. As for petitioner's charge that both his wife and father were denied permission to visit him during the first day of his confinement at the Waynesboro Jail, Captain Whitlock testified that petitioner was only held in Waynesboro for a short time before being transferred to the jail in Staunton.

Captain Whitlock's testimony is amply substantiated by that of Mr. H. H. Tiffany, petitioner's court appointed attorney at his trial in Waynesboro on May 14, 1962. Mr. Tiffany testified that petitioner told him that upon arrest he (the petitioner) had made a "clear breast of it" and had then given the officers permission to search his car, opening the trunk for them himself. Mr. Tiffany also testified that as peti-

tioner's confession was made before the *Escobedo* decision his primary concern was whether the confession was the product of duress or coercion. From his investigation of the case, Mr. Tiffany stated he was satisfied that no duress was used and that "he (the petitioner) just stood there when caught and openly told them what he had done."

In light of the testimony of these men and a valid search warrant, a copy of which was introduced into evidence, it is clear that the petitioner has not established by a preponderance of the evidence that the confession which allegedly motivated the guilty pleas entered in these cases was the product of coercion and of evidence obtained by an unlawful search and seizure. With regard to the search of petitioner's car and the seizure of burglary tools therefrom, it is well settled that a search may be made without a warrant if voluntary consent is given. United States v. Smith, 308 F.2d 657 (2nd Cir.1962). Consent to a search, in order to be voluntary, must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion, and it is not lightly to be inferred. Simmons v. Bomar, 349 F.2d 365, 366 (6th Cir.1965). We think that the testimony offered by Captain Whitlock and Mr. Tiffany amply demonstrates that petitioner's consent to the search of his automobile satisfies this test of voluntariness. It is thus apparent that petitioner's attack upon these convictions must fail unless he can establish that in each case his guilty plea was coerced or that he was denied the effective assistance of counsel.

## II

Certainly the guilty pleas entered before the Circuit Court of Waynesboro and Nelson County are not subject to either ground of attack. Mr. Tiffany, who represented the petitioner at both of these trials, testified emphatically that he had "never" coerced anyone into pleading guilty. Other than his own unsupported allegation, petitioner has offered no affirmative proof to refute that testimony. Petitioner has again failed to sustain his burden of proof, and his allegation that the guilty pleas in these two cases were coerced is accordingly rejected.

The petitioner supports his argument that he was denied the effective assistance of counsel at his Waynesboro trial, by alleging that counsel was not appointed for him until the day of his trial, that he had only "a short courtroom talk" with counsel before he pled guilty to all ten indictments and that counsel did not discuss the charges with him before advising him to plead guilty. While the conviction order indicates that Mr. Tiffany was appointed to represent petitioner on the day of trial, Mr. Tiffany testified that the actual appointment was made on the opening day of the term rather than on the day of the trial itself. Mr. Tiffany also testified that he discussed petitioner's case at length with him, reviewing each of the ten indictments individually with the petitioner. Mr. Tiffany's testimony further reveals that he conferred not only with petitioner but with the state's witnesses and the Commonwealth's Attorney. Finally, Mr. Tiffany testified that he informed the petitioner of the maximum penalty that could be imposed under Virginia law if a guilty plea were entered to the charges, and that when the court declined to follow the Commonwealth's recommendation for concurrent sentences, he informed petitioner of his right to withdraw his guilty plea if he so desired. Clearly Mr. Tiffany's representation satisfies the standard enunciated in Jones v. Cunningham, supra, and quoted above. For this reason we reject petitioner's contention that he was denied effective representation at his Waynesboro trial.

The petitioner claims ineffective representation at the Nelson County trial on the grounds that, again, counsel was not appointed until the day of trial and that "there was no discussion between petitioner and counsel about the case." In this case it appears that Mr. Tiffany

was not in fact appointed until the day of the trial. However, we think the record shows affirmatively that petitioner's case was not prejudiced by the late appointment.

Certainly it is not true that there was no discussion about the case between petitioner and Mr. Tiffany. The latter testified that petitioner advised him that after escaping from the Amherst County jail, he proceeded to Nelson County where he broke into the Arlington Cold Storage Cooperative Building, was arrested by Nelson County authorities and made a complete confession at that time. Mr. Tiffany testified that petitioner also informed him that no duress was used to procure the confession. It was Mr. Tiffany's further testimony that the version of the incident offered by the authorities corresponded exactly with petitioner's. Mr. Tiffany stated that on the basis of his investigation it was his opinion that petitioner had no valid defense to the single charge of statutory burglary and larceny. Under the circumstances of the case, we agree with this opinion.[2] Furthermore, the petitioner again has made no suggestion either at the plenary hearing or in the petition itself that he had any information which could have been used in his defense or in mitigation of his sentence which Mr. Tiffany's investigation did not disclose. Thus we conclude that petitioner's case was not in fact prejudiced by counsel's late appointment, and petitioner's argument that he was denied effective representation at his Nelson County trial is accordingly rejected.

The petitioner supports his argument that he was denied effective assistance of counsel at his Amherst County trial of April 24, 1962 by again alleging that counsel was not appointed to defend him until the day of trial and that his consultation with his court appointed attorney was of only a few minutes duration. While the record indicates that it was not until the day of trial that Mr. Robert S. Tinsley was appointed to defend the petitioner on a charge of breaking and entering the garage and storeroom of an Amherst County Chevrolet company, we again conclude that there is affirmative evidence to demonstrate that petitioner was not prejudiced by the late appointment of counsel.

Mr. Tinsley testified that following his appointment he went into the charge thoroughly with petitioner and that he conferred with the arresting officers and the Commonwealth's Attorney. Mr. Tinsley also testified that he was aware that petitioner had confessed to breaking and entering offenses in Amherst and other counties after his arrest in Waynesboro. In the face of this confession and the fact that petitioner readily admitted his guilt to the charge, Mr. Tinsley testified that he advised petitioner to plead guilty in return for a recommended sentence by the Commonwealth's Attorney, if that recommendation would be accepted by the court. The recommendation was accepted, and petitioner entered the plea of guilty, the validity of which he now contests.

We think that Mr. Tinsley's testimony affirmatively demonstrates that there was no valid defense available to the petitioner. Again petitioner had admitted his guilt to the charge and, as in the other cases, petitioner has offered no information in defense or mitigation which counsel's investigation failed to disclose. Thus we again conclude that his case was not in fact prejudiced by the late appointment of counsel.

2. Certainly the "Arlington Cold Storage Cooperative Building" constitutes a "storehouse" or "warehouse" within the meaning of Va.Code Ann. §§ 18–160 and 18–161 (1950), now §§ 18.1–88 and 18.1–89 (Supp.1960). This fact distinguishes the present case from Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967) in which the court found that the record did not conclusively establish that there was no defense available to the petitioner because it was questionable whether a "cabin" constituted a "dwelling house or an outhouse adjoining thereto * * *" within the meaning of these two statutory provisions.

In response to petitioner's allegation that his guilty plea was coerced, Mr. Tinsley testified that "I would never under any circumstances plead a man guilty who did not want to plead guilty, and if I did not agree with him \* \* \* I would ask to be removed from the case." In the face of this testimony it is clear that petitioner has again failed to sustain his burden of proof on this charge.

The petitioner's argument that he was denied the effective assistance of counsel at his trial in Rockingham County is also based on the charge that counsel was not appointed to defend him until the day of trial and that his consultation with counsel was limited to "a few minutes of courtroom conversation."

The record indicates that Mr. Don Earman was appointed on the day of trial to defend petitioner on three charges of larceny and breaking and entering certain "buildings" belonging to different Rockingham County business establishments.[3] Mr. Earman testified that he was given a copy of a written statement signed by petitioner and that he discussed this statement at length with him in a private conference room adjacent to the courtroom rather than in the courtroom itself. Mr. Earman further testified that petitioner admitted the truth of the charges and stated that he had no defense to them. Mr. Earman also stated that petitioner made no mention to him of the allegedly illegal search of the trailer or of the alleged implication of his wife in the charges against him. When asked by the court whether he had ample opportunity to investigate and prepare the case between the time of his appointment and the trial, Mr. Earman stated, "I was convinced in my own mind that everything had been done that could or should have been done."

On the basis of this testimony we again think that there is adequate affirmative proof in the record to demonstrate that the petitioner's case was not prejudiced by the late appointment of counsel. As in the other cases this conclusion is reinforced by petitioner's failure to suggest information in defense or mitigation of the charges which counsel's inquiry failed to disclose. Also as in the other cases, petitioner has failed to substantiate his coercion charge, and it is rejected as entirely without merit.

For the reasons stated above none of the petitioner's contentions provide an adequate basis of relief, and, therefore, it is adjudged and ordered that the petition for habeas corpus be dismissed and the writ denied. A certified copy of this opinion and judgment is directed to be sent to the petitioner and to the respondent.

---

3. The term "house" as used in §. 18–160 (now § 18.1–88) under which petitioner was indicted is sufficiently broad to include a "building". See McDorman v. Smyth, 187 Va. 522, 527, 47 S.E.2d 441 (1948) in which the court adopted this definition of "house": "A *building* in which something is housed." (Emphasis supplied.)