COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Bumgardner
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                 MEMORANDUM OPINION* BY
v.    Record No. 1364-98-3     JUDGE RUDOLPH BUMGARDNER, III
                                     NOVEMBER 24, 1998
DOUGLAS JEROME SMITH


              FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                      Roy B. Willett, Judge

          Kathleen B. Martin, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellant.

          Robert C. Hagan, Jr., for appellee.



     The Commonwealth appeals the suppression of drugs seized

after a search of the defendant.  It argues that the defendant

consented to the search, but we conclude that the police

illegally seized the defendant before he consented.  After that

seizure, the Commonwealth could prove neither that the evidence

was unconnected to the seizure nor that the defendant freely and

voluntarily consented to the search.  Accordingly, we affirm the

trial court's decision to suppress the evidence.

     "In an appeal by the Commonwealth of an order of the trial

court suppressing evidence, the evidence must be viewed in the

light most favorable to the defendant . . . ."  Commonwealth v.

Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992)

(citations omitted).  While we are bound to review de novo the

_____
     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error, and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996). Questions of fact are binding on appeal unless plainly wrong. See McGee v. Commonwealth, 25 Va. App. 193, 198 n.1, 487 S.E.2d 259, 261 n.1 (1997) (en banc).

Officer Terwilliger was on routine patrol when he saw the defendant standing behind a Food Lion store near a no trespassing sign. He turned his car around and parked about thirty feet from the defendant to see if he was all right and what he was doing there. Terwilliger did not suspect the defendant of criminal behavior, nor did he call for any assistance.

As Officer Terwilliger got out of his car, the defendant walked toward him carrying a large nylon bag. Terwilliger asked the defendant what he was doing, and the defendant replied that he had fought with his girlfriend. The defendant added that he had left her apartment, although he could not give her address, was waiting for a ride, and that she was probably at a nearby pay phone. Terwilliger continued talking with the defendant because he was suspicious of what he perceived as conflicting stories regarding the girlfriend. Eventually, he asked the defendant if he could look in his bag. The defendant set it down on the ground, lifted his hands, and said, "go ahead." Terwilliger took the bag to his vehicle to use the headlights and began looking in

it.

While Terwilliger was inspecting the bag, Officer Hoover arrived. He heard the radio message that Terwilliger was marking off to check a suspicious person. Without asking whether Terwilliger needed assistance or being asked to assist, Hoover patted down the defendant and asked him if he had any weapons. The defendant replied that he had none and added that he had never been in any trouble.

The defendant put his hands in his pockets, and Hoover told him to keep his hands out of his pockets. When the defendant continued to put his hands in his pockets because it was cold, Hoover said he wanted to know what the defendant had in his pockets. After repeated requests, the defendant emptied his pockets onto the hood of the police car, but he kept a change purse in his hand. Hoover asked to see the purse, and the defendant handed it to him. When asked what it contained, the defendant replied it held only money. Hoover asked if he could look inside, and the defendant responded, "do you have to look in it?" Hoover replied that he just wanted to see what was in it. The defendant replied "go ahead." Hoover first found a small baggy corner with residue and then found two more baggies in a side compartment that contained a white powdery substance. The officers formally arrested and placed the defendant in custody because of the items found in the change purse. Those are the items that the defendant sought to suppress.

Not every police-citizen encounter implicates the Fourth

Amendment.  See McGee, 25 Va. App. at 198, 487 S.E.2d at 261;
Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173
(1988) (en banc).  A consensual encounter occurs where a
defendant voluntarily responds to an officer's request.  See
McGee, 25 Va. App. at 198, 487 S.E.2d at 261.  Such an encounter
becomes a seizure "[o]nly when the officer, by means of physical
force or show of authority, has restrained the liberty of a
citizen. . . ."  Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  A
person is seized if in view of all the circumstances, a
reasonable person would believe he is not free to leave.  See
Ford v. City of Newport News, 23 Va. App. 137, 142, 474 S.E.2d
848, 850 (1996) (citation omitted).  Factors to consider when
determining whether a seizure occurred are "the threatening
presence of several officers, . . . , some physical touching of
the [suspect], or the use of language or tone of voice indicating
that compliance with the officer's request might be compelled."
United States v. Mendenhall, 446 U.S. 544, 554 (1980).  See
Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137
(1997) (en banc) (a seizure requires some physical restraint or
submission to an officer's authority).

We conclude that the encounter between Officer Terwilliger
and the defendant was consensual.  As Terwilliger exited his
vehicle, the defendant approached him.  The initial encounter was
entirely consensual.  Neither the initial encounter nor the
search of the large nylon bag implicated the Fourth Amendment.
The defendant consented freely and voluntarily to both actions,

and the circumstances were not coercive.

The second officer arrived and immediately frisked the defendant. He had no basis to conduct a Terry frisk because he had no knowledge about the situation he was approaching. He had no facts that would articulate a reasonable suspicion that the defendant was engaged in criminal activity because even the officer who knew the facts did not suspect the defendant was so engaged. Hoover had no facts that would articulate a reasonable suspicion that the defendant was armed and dangerous because Officer Terwilliger did not suspect the defendant posed a threat.

Officer Terwilliger's actions imply that he did not feel he had reasonable grounds to suspect the defendant. Although Terwilliger stopped to investigate because the defendant was in a suspicious location under suspicious circumstances, he was not worried about the defendant being a threat, and he did not suspect criminal activity. The defendant was within a few feet of him. Terwilliger was talking with the defendant, but his attention was focused on his search of the defendant's bag. Terwilliger never felt the need to frisk the defendant before returning to the cruiser to search the bag. Cf. Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977) ("any man of 'reasonable caution' would likely have conducted the 'pat down'" (citation omitted)). Officer Hoover lacked reasonable suspicion to conduct a Terry search, and when he did, he seized the defendant and implicated the Fourth Amendment. A person is seized by a laying on of hands or an application of physical force to restrain movement. See

- 5 -

<u>California v. Hordari D.</u>, 499 U.S. 621, 626 (1991).

The Commonwealth argues that the defendant consented to Officer Hoover searching in the change purse.  In reply to Hoover's initial request to look inside the purse, the defendant asked, "do you have to?" but finally said "go ahead."  "'Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred.'"  <u>Elliotte v. Commonwealth</u>, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988) (quoting <u>Via v. Peyton</u>, 284 F. Supp. 961, 967 (W.D. Va. 1968)). The burden is on the Commonwealth to prove the voluntariness of the consent and a lack of duress.  <u>See</u> <u>Bumper v. North Carolina</u>, 319 U.S. 543, 548 (1968); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 248-49 (1973); <u>Lowe v. Commonwealth</u>, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977), <u>cert.</u> <u>denied</u>, 435 U.S. 930 (1978).  This burden "cannot be discharged by showing no more than acquiescence to a claim of lawful authority."  <u>See</u> <u>Bumper</u>, 319 U.S. at 548-49. Whether a consent to search is voluntary is a question of fact. <u>See</u> <u>Gray v. Commonwealth</u>, 233 Va. 313, 327, 356 S.E.2d 157, 164, <u>cert.</u> <u>denied</u>, 484 U.S. 873 (1987).

The defendant gave consent under circumstances similar to those in <u>Satchell v. Commonwealth</u>, 20 Va. App. 641, 460 S.E.2d 253 (1995) (<u>en</u> <u>banc</u>).  An officer who suspected that Satchell was selling drugs followed the defendant up the steps of a house. When Satchell could not get inside because the door was locked, the officer asked, "What's in your hand pal?"  Satchell opened his hand in response to the question and revealed illegal drugs.

Satchell held that the police officer illegally seized the defendant and discovered the drugs only upon that unlawful seizure.  See id. at 650, 460 S.E.2d at 257.  In this case, the officer illegally seized the defendant and discovered the drugs in the coin purse only when the defendant responded to the officer's request upon this unlawful seizure.  As in Satchell, the evidence must be suppressed.

We find no evidence that the defendant's consent was voluntary and unconnected to the seizure.  After seizing the defendant, Officer Hoover asked about weapons, got the defendant to empty his pockets, and then persisted in searching the coin purse.  Hoover was not authorized to do that even if he reasonably suspected that the defendant had a weapon because the change purse could not conceal one.  When the defendant complied with Hoover's entreaties, he was responding to pressure created by the seizure.  He did not voluntarily consent to the search of his coin purse, and the evidence found in it is not admissible.

We affirm the suppression of the evidence.

Affirmed.