COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


DIALLOBE BALAWA DORSEY

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0309-06-2                    JUDGE SAM W. COLEMAN III
                                                          MAY 1, 2007
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF HANOVER COUNTY
                              John Richard Alderman, Judge

            C. David Whaley (Morchower, Luxton & Whaley, on brief), for
            appellant.

            Benjamin H. Katz, Assistant Attorney General (Robert F.
            McDonnell, Attorney General; Jonathan M. Larcomb, Assistant
            Attorney General, on brief), for appellee.


        Diallobe Balawa Dorsey was convicted of possession of cocaine with intent to distribute as

an accommodation and possession of marijuana.  Dorsey argues that the trial court erred by denying

his motion to suppress and concluding the evidence was sufficient to support the convictions.  We

agree that the search of Dorsey violated his Fourth Amendment rights and that the trial court's

denial of his motion to suppress was error.  Thus, we reverse appellant's convictions and remand to

the trial court for further proceedings consistent with this opinion if the Commonwealth be so

advised.

                                        BACKGROUND

        In challenging the denial of a motion to suppress, the burden is on the appellant to prove

that, when the evidence is considered in the light most favorable to the Commonwealth, the motion

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to suppress should have been granted.  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980); Logan v. Commonwealth, 29 Va. App. 353, 358-59, 512 S.E.2d 160, 162-63 (1999) (explaining the standard of review on appeal).  The factual findings of the trial court are accepted unless plainly wrong or without supporting evidence.  Ornelas v. United States, 517 U.S. 690, 699 (1996); see also Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

At 9:00 p.m. on January 14, 2005, Deputy Charles Gendrow initiated a traffic stop of Dorsey's car for failing to bring his vehicle to a complete stop before entering the highway.  The incident occurred as Dorsey was driving onto a secondary road from a truck stop parking lot near Interstate 95.  As requested, Dorsey produced for Gendrow his operator's license and car rental agreement.  Gendrow walked to his patrol car to check the status of Dorsey's license and driving record.  While checking, Gendrow decided he was going to search Dorsey, so he called for backup.  Gendrow acknowledged he had no reason to search Dorsey or his car or to believe Dorsey possessed illegal drugs and that he did not suspect Dorsey was engaged in any other type of criminal activity.  Within minutes after Gendrow called for backup, Deputy Parrish arrived and parked his car behind Gendrow's.  Deputy Parrish stood behind Dorsey's car on the passenger side but did not interact with Dorsey and testified he "wasn't close enough to [Gendrow] where [he] was listening to his conversation."

Gendrow went to Dorsey's car and returned his license and car rental agreement.  Gendrow gave Dorsey a warning about failing to come to a complete stop.  Gendrow then turned and walked towards his patrol car, and Dorsey started his car's engine.  Before Dorsey drove away, however, Gendrow returned to Dorsey's car and asked if he had any weapons or drugs in his car.  Dorsey replied there were none.  Gendrow then asked Dorsey for permission to search his car.  Dorsey did not reply, but he turned off the engine and exited the car.  Gendrow then asked Dorsey to walk to

the rear of the car because he intended also to ask Dorsey for consent to search his person. Gendrow testified he "used his arm to direct Dorsey" to the area behind Dorsey's car and in front of Gendrow's patrol car. As Dorsey stood between his car, Gendrow's patrol car, and Gendrow and Parrish, Gendrow asked "if he could search Dorsey for weapons or drugs." Dorsey responded that he was late and needed to go to work. Gendrow told Dorsey it "would only take a minute" to search him and his car "and [he'd] have [Dorsey] out of there." Dorsey then "nodded his head up and down[,] . . . and he [] turned around and put his hands up." Gendrow testified Dorsey never verbally consented to the search of his car or his person.

Gendrow searched Dorsey and seized from his pants pocket 13.8 grams of marijuana. Gendrow arrested Dorsey. A further search disclosed that Dorsey had 7.86 grams of cocaine in a pocket and $4,191 wrapped in six separate bundles.

## ANALYSIS

Dorsey argues Deputy Gendrow violated his Fourth Amendment rights by extending a lawful detention for a traffic infraction into an unlawful, non-consensual seizure and, thus, that Dorsey's consent to a search of his person was not voluntary. At the conclusion of the suppression hearing, the trial court found that Dorsey's testimony, which contradicted most of Gendrow's account surrounding the search, was not credible and that his testimony lacked corroboration. Reviewing only Gendrow's testimony, and taking into account the requisite standard of review, we hold the evidence fails to support a finding that Dorsey's consent to the search of his person was valid under the Fourth Amendment.

The Fourth Amendment to the United States Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV.

> In considering a challenge under the Fourth Amendment, questions
> of reasonable suspicion and probable cause involve questions of

both law and fact and are reviewed *de novo* on appeal. Similarly, the question whether a person has been seized in violation of the Fourth Amendment is reviewed *de novo* on appeal. An appellate court, however, "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."

Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000) (quoting Ornelas, 517 U.S. at 699) (citations omitted).

> Police officers do not violate the Fourth Amendment when they stop and question an individual if they have reasonable articulable suspicion that the person is engaged in criminal activity, or when the person's encounter with the police is consensual. There is no "litmus test" for determining whether an encounter is consensual or constitutes an illegal seizure. If, however, a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment.

Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003) (citations omitted).

Harris expressly contemplates that, even in the face of a request rather than a demand made by a police officer, a reasonable person may conclude he is not free to decline the request or leave the scene and, thus, that the encounter is a seizure. Id. Circumstances relevant to the determination of whether a person would feel free to decline a police officer's request or leave the scene of an encounter, as set out in United States v. Mendenhall, 446 U.S. 544, 554 (1980), include:

> the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave. The decision whether the encounter was consensual must be made based on the totality of the circumstances.

Harris, 266 Va. at 32, 581 S.E.2d at 209 (citations omitted).

Pursuant to the holding in <u>Dickerson v. Commonwealth</u>, 266 Va. 14, 581 S.E.2d 195 (2003), <u>aff'g</u>, 35 Va. App. 172, 543 S.E.2d 623 (2001), we conclude that the traffic stop was a seizure but that the original seizure ended before Deputy Gendrow asked for consent to search Dorsey's car and person.  In <u>Dickerson</u>, Deputy Parker stopped Dickerson for failing to yield the right-of-way to an ambulance.  266 Va. at 16, 581 S.E.2d at 196.  Although Deputy Parker called for assistance and a backup officer was on the scene for the duration of the traffic stop, only Deputy Parker interacted with Dickerson.  35 Va. App. at 180, 543 S.E.2d at 627.  Deputy Parker detected the odor of alcohol on Dickerson's breath, but Dickerson said he had consumed only one beer, and he completed a series of field sobriety tests to Deputy Parker's satisfaction.  266 Va. at 16, 581 S.E.2d at 196.  Deputy Parker decided not to arrest Dickerson for any alcohol-related violations and told him "he was free to go but that he might be subpoenaed later for the failure-to-yield traffic infraction."  <u>Id.</u>  Dickerson then "returned to his car, opened the driver's side door and started to get back into the vehicle when Deputy Parker asked Dickerson 'if there was anything in the car [he] should know about, dope, marijuana, roaches in the ashtray, something, anything like that.'"  <u>Id.</u>  Dickerson said no, but when Deputy Parker inquired whether Dickerson smoked marijuana, Dickerson admitted that he did and that "there were 'some roaches in the ashtray.'"  <u>Id.</u>

Dickerson, like Dorsey, "argue[d] that Deputy Parker's persistent questioning regarding criminal activity, after telling Dickerson that he was free to go, would lead a reasonable person to believe that Deputy Parker 'had decided to continue the detention and that the officer had revoked his consent for the driver to leave.'"  <u>Id.</u> at 17-18, 581 S.E.2d at 197.  The Virginia Supreme Court "disagree[d]," holding as follows:

> The record in this case shows not only that a reasonable person
> would have felt free "to disregard the police and go about his
> business" but also that Dickerson believed that his detention had
> ended, that he could leave, and that he was no longer required to

> remain with the officers or answer their questions. When Deputy Parker told Dickerson that he was free to go, Dickerson returned to his vehicle and started to get inside. This course of action is not consistent with a belief that one is under police detention or subject to police control.

Id. at 18, 581 S.E.2d at 197. Thus, held the Court, "[t]he events of the original encounter resulting in Dickerson's initial detention and release were complete and the ensuing events constituted a new, and consensual, encounter." Id. Similarly, in Dorsey's case, Dorsey's actions also manifested his understanding that he was free to leave after Deputy Gendrow returned his license and rental agreement. Although Dorsey, unlike Dickerson, did not leave his car during the initial encounter, Dorsey turned off the engine, and after Deputy Gendrow returned Dorsey's license and gave him a warning, Dorsey again started his car's engine.

Nevertheless, we conclude Deputy Gendrow's subsequent actions evolved into a new seizure for which he lacked reasonable suspicion or probable cause. We also hold that Dorsey's eventual agreement to be searched, which the trial court found constituted voluntary consent rather than mere acquiescence to the deputies' show of authority, was tainted by that illegal seizure, rendering the search invalid.

"At trial, the Commonwealth . . . 'must prove, given the totality of the circumstances, that [consent to search] was freely and voluntarily given.'" Hargraves v. Commonwealth, 37 Va. App. 299, 307, 557 S.E.2d 737, 740-41 (2002) (quoting McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999)) (citation omitted). "'Consent . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred.'" Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988) (quoting Via v. Peyton, 284 F. Supp. 961, 967 (W.D. Va. 1968)). "Although the consent need not be oral, mere acquiescence is not enough. Additionally, the Commonwealth bears the burden of proving that consent was in fact given, and 'that burden is heavier where the alleged consent is based on an implication.'"

- 6 -

Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78-79, 538 S.E.2d 316, 318 (2000) (quoting Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986)) (citation omitted). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).

The mere fact that a person is in custody at the time he or she consents to a search is not sufficient in itself to demonstrate a coerced consent to search. Reynolds v. Commonwealth, 9 Va. App. 430, 439, 388 S.E.2d 659, 665 (1990). However, "'[w]hen trying to establish that there was a voluntary consent after an *illegal* [detention], the [Commonwealth] has a much heavier burden to carry than when the consent is given after a permissible stop.'" Davis v. Commonwealth, 37 Va. App. 421, 433, 559 S.E.2d 374, 380 (2002) (quoting United States v. Ballard, 573 F.2d 913, 916 (5th Cir. 1978)) (emphasis added). In the case of an illegal stop, the Commonwealth must establish both that the consent was voluntary and that it "was 'sufficiently an act of free will to purge the primary taint' of the illegal detention." Id. (quoting Wong Sun v. United States, 371 U.S. 471, 486 (1963)).

> In determining whether consent was "sufficiently attenuated from the [illegal detention] to purge its taint," we have "considered, in addition to the voluntariness of the consent, the temporal proximity and the presence of intervening circumstances between the [illegality] and the consent, [the defendant's] awareness of a right to withhold consent, and the purpose and flagrancy of the police misconduct."

Id. at 434, 559 S.E.2d at 380 (quoting Commonwealth v. Ealy, 12 Va. App. 744, 755, 407 S.E.2d 681, 688 (1991)).

Similarly, a request for consent to search does not, standing alone, convert a consensual encounter into a seizure "as long as the police do not convey a message that compliance with their requests is required." Florida v. Bostick, 501 U.S. 429, 435 (1991). Nevertheless, a request for consent to search is a factor to be considered in determining under the Mendenhall calculus

"whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Id. at 436-37. Another factor to be considered, in addition to the actual words and tone of voice used, is the officer's persistence in attempting to continue the contact in the face of statements or actions of the citizen indicating a desire to end the contact. See Reittinger, 260 Va. at 236-37, 532 S.E.2d at 27-28 (holding officer's thrice-repeated request for consent to search was factor in determining whether driver had been seized); Dickerson, 35 Va. App. at 182, 543 S.E.2d at 628 (noting deputy "was not persistent in seeking information from Dickerson in the face of either resistance on his part or under circumstances where his willingness to cooperate was not made manifest"); see also Morgan v. Woessner, 997 F.2d 1244, 1253 (9th Cir. 1993) ("When a citizen expresses his or her desire *not* to cooperate, continued questioning cannot be deemed consensual."); State v. Stovall, 788 A.2d 746, 753 (N.J. 2002) (holding detention occurred when, following consensual encounter in which officer informed defendant he was a narcotics interdiction officer, suspected her of drug trafficking and wanted to search her bag, defendant refused his request and said she wanted to leave, after which officer "asked her could she please stand by one minute" and said, when defendant repeated that she wanted to leave, "this will just take a few moments"); People v. Morales, 935 P.2d 936, 940 (Colo. 1997) (holding investigative detention began when individual declined officers' offer of a ride, thanked them and turned to leave, and officers began to ask questions about criminal conduct in a tone trial court found combined with other facts to compel conclusion that individual was seized).

Here, the second part of Dorsey's encounter with Deputy Gendrow, like Dickerson's encounter with Deputy Parker, began consensually when Deputy Gendrow returned to Dorsey's window and asked if Dorsey had any weapons or drugs in his car. However, in contrast to Dorsey's case, the evidence in Dickerson established that the encounter between Dickerson and

Deputy Parker remained consensual until Parker obtained information giving him reasonable suspicion to detain Dickerson further and search his vehicle because Deputy Parker's questions up to that point had not "implicate[d] restraint or the need to restrain," 266 Va. at 18, 581 S.E.2d at 197, and "were limited to gathering information that Dickerson was free to decline giving." 35 Va. App. at 182, 543 S.E.2d at 628. The record also failed to indicate where the backup officer and Deputy Parker himself "were standing when Deputy Parker asked Dickerson about his possession and use of marijuana." 266 Va. at 18, 581 S.E.2d at 197. Furthermore, the Court held, "Parker was not persistent in seeking information from Dickerson in the face of either resistance on his part or under circumstances where his willingness to cooperate was not made manifest." 35 Va. App. at 182, 543 S.E.2d at 628. Because Dickerson "responded to Deputy Parker's questions by freely indicating that he had used marijuana in the past" and had in his car "what [he] admitted were the remnants of marijuana cigarettes," Deputy Parker had reasonable suspicion to look inside the vehicle and then probable cause to arrest Dickerson. 266 Va. at 18, 581 S.E.2d at 197.

Here, Dorsey, like Dickerson, gave a negative verbal response at the beginning of the second part of the encounter when Deputy Gendrow inquired whether Dorsey had any drugs or weapons in his car. However, Deputy Gendrow, unlike Deputy Parker, did not ask Dorsey any additional questions about whether he used drugs or what was in Dorsey's car; Gendrow asked instead to search Dorsey's vehicle. Dorsey, rather than responding verbally to the request to search, turned off his engine and exited his car. Officer Gendrow, without seeking to clarify whether Dorsey intended by his actions to consent to a search of his car, then "used his arm to direct Dorsey" to the area between Dorsey's car and Gendrow's patrol car, near where Gendrow's backup, Deputy Parrish, was standing. Then, as Dorsey stood with both Officer Gendrow and Officer Parrish between Dorsey's car and the deputies' cars, Gendrow asked for

permission to search Dorsey's person "for weapons or drugs." Although Dorsey responded that he was already significantly late and needed to get to work, effectively declining Gendrow's request, Deputy Gendrow persisted, stating, it "would only take a minute, and [he'd] have [Dorsey] out of [t]here."

We hold, as a matter of law, that Gendrow's directing Dorsey to the rear of the car near where Officer Parrish stood, which was next to Officer Gendrow's police cruiser, followed by Gendrow's persistence in seeking permission to search in the face of Dorsey's statement that he was already late and needed to get to work, conveyed to a reasonable person in Dorsey's position that he was not free to leave until he agreed to be searched and the searches of his person and automobile were complete. Thus, Gendrow's actions converted the encounter into a seizure unsupported by reasonable suspicion or probable cause, and the court's finding that Dorsey voluntarily consented to the search when he nodded his head and raised his arms, standing alone, was insufficient to overcome the taint of the illegal seizure. See Bostick, 501 U.S. at 434 (Fourth Amendment scrutiny is triggered the moment an encounter loses "its consensual nature."). These circumstances stand in marked contrast to those in Dickerson, in which (1) the deputy's questions "did not implicate restraint or the need to restrain"; (2) the evidence failed to establish the whereabouts of the backup officer during the critical portions of the encounter; and (3) the deputy "was not persistent in seeking information from [the citizen] in the face of either resistance on his part or under circumstances where his willingness to cooperate was not made manifest." 35 Va. App. at 182, 543 S.E.2d at 628.

Further, because there were no intervening circumstances and no temporal break between the illegal seizure and Dorsey's nodding his head and raising his arms in acquiescence to Deputy Gendrow's request to search him, we hold the evidence fails as a matter of law to support a finding that Dorsey's consent to the search of his person was "'sufficiently attenuated from the

[illegal detention] to purge its taint.'" <u>Davis</u>, 37 Va. App. at 434, 559 S.E.2d at 380 (quoting

<u>Ealy</u>, 12 Va. App. at 755, 407 S.E.2d at 688).

Accordingly, we reverse the trial court's decision denying Dorsey's motion to suppress

and remand to the trial court for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>

Humphreys, J., dissenting.

The majority holds that as a matter of law,

> Gendrow's directing Dorsey to the rear of the car near where
> Officer Parrish stood, . . . followed by Gendrow's persistence in
> seeking permission to search in the face of Dorsey's statement that
> he was already late and needed to get to work, conveyed to a
> reasonable person in Dorsey's position that he was not free to
> leave until he agreed to be searched and the searches of his person
> and automobile were complete,

and thus, the search of Dorsey's person violated the Fourth Amendment. I disagree, and would

hold that Dorsey was not seized in violation of the Fourth Amendment, that he voluntarily

consented to the search of his person, and that the trial court did not err in denying the motion to

suppress. Because I would hold that the trial court correctly denied the motion, I would further

hold that the evidence was sufficient to support Dorsey's conviction of distributing cocaine as an

accommodation, in violation of Code § 18.2-248. Accordingly, I respectfully dissent.

### The "Seizure"

Whether a police-citizen encounter constitutes a seizure, thereby implicating the Fourth

Amendment, presents a mixed question of law and fact, requiring independent appellate review.

See Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 361 (1995). "In

performing such analysis, we are bound by the trial court's findings of historical fact unless

'plainly wrong' or without evidence to support them and we give due weight to the inferences

drawn from those facts by resident judges and local law enforcement officers." McGee v.

Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).

"[A] consensual encounter occurs when police officers approach persons in public places

to ask them questions, provided a reasonable person would understand that he or she could refuse

to cooperate." Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992)

(internal quotations and citations omitted). Consensual encounters "need not be predicated on

any suspicion of the person's involvement in wrongdoing, and remain consensual as long as the citizen *voluntarily cooperates* with the police." Id. (internal quotations and citations omitted) (emphasis added). Circumstances to be considered when determining whether a reasonable person would have felt free to leave include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language, or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 553-54 (1980).

In this case, Dorsey concedes that he knew he was free to leave after Gendrow completed the traffic stop. Dorsey also concedes that he consented to the search of his vehicle. In other words, Dorsey knew he could refuse to cooperate with any of Gendrow's requests once the initial traffic stop was over. However, Dorsey continued to cooperate with Gendrow by consenting to the search of his vehicle.

Moreover, the surrounding circumstances support the trial court's conclusion that a reasonable person would have felt free to leave. Specifically, although Officer Parrish ("Parrish"), a backup officer, was present, he did not have any interaction with Dorsey. In fact, Parrish stated that he was "not a part of anything from the time of the stop until [Dorsey] was arrested" and that he "wasn't close enough to [Gendrow] where I was listening to his conversation." Neither officer ever displayed his weapon, nor did either officer touch Dorsey until the actual search of his person. And, Gendrow did not indicate that compliance with his request to search was required. Instead, he merely indicated that it would "only take a minute." Thus, based on these facts, I would hold that the trial court did not err in finding that Dorsey was not seized for purposes of the Fourth Amendment. Accordingly, I now turn to the issue of whether Dorsey consented to the search of his person.

- 13 -

"Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred." Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78-79, 538 S.E.2d 316, 318 (2000) (citing Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988)).  Mere acquiescence is not enough, and the Commonwealth bears the burden of proving that consent was in fact given.  Walls v. Commonwealth, 2 Va. App. 639, 645-46, 347 S.E.2d 175, 178-79 (1986).

"Courts have found consent to a *specific request* to search a person when evidenced by conduct alone, such as turning and 'placing [one's] hands against the wall without prompting,' or shrugging one's shoulders and then extending one's arms." Jean-Laurent, 34 Va. App. at 79, 538 S.E.2d at 318 (citing Bynum v. Commonwealth, 23 Va. App. 412, 417, 477 S.E.2d 750, 753 (1996); United States v. Wilson, 895 F.2d 168, 170 (4th Cir. 1990)) (emphasis in original); see also Lawrence v. Commonwealth, 17 Va. App. 140, 146, 435 S.E.2d 591, 594 (1993) (upholding consensual nature of search where appellant, engaged in a consensual encounter and not in custody, "made no attempt to leave or move away when the officer began to feel the appellant's left front pocket").  The presence of consent is a factual question to be determined by the trier of fact, see Bynum, 23 Va. App. at 418, 477 S.E.2d at 753, and therefore, we will only reverse the trial court's ruling on the suppression motion if plainly wrong, see Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

Here, Gendrow testified that, after walking to the rear of Dorsey's car, he asked Dorsey "if he could search Dorsey for weapons or drugs."  Dorsey responded that he was late and that he needed to get to work.  Gendrow responded that it "would only take a minute, and [he'd] have [Dorsey] out of [t]here."  Dorsey then "nodded his head up and down . . . and he [] turned around and put his hands up."  Moreover, Dorsey made no attempt to end the encounter as he was

entitled to do. Thus, I would hold that based on these facts, when viewed in the light most favorable to the Commonwealth, see McGee, 25 Va. App. at 198, 487 S.E.2d at 261, the trial court correctly held that the search of Dorsey's person was consensual and that the court did not err in failing to grant the motion to suppress.

### Sufficiency of the Evidence

I initially note, with respect to the sufficiency of the evidence, that Dorsey frames his question presented as: "The trial court erred in denying [the] motion to suppress and therefore the evidence is insufficient to support the convictions." Although the question suggests that Dorsey contests both the marijuana and the cocaine convictions, Dorsey's brief only addresses the conviction for possession of cocaine with intent to distribute as an accommodation. Accordingly, because Dorsey does not provide us with any argument or citation of authority regarding the conviction for possession of marijuana, the argument is defaulted and I would not address it. See Mason v. Commonwealth, 49 Va. App. 39, 46, 636 S.E.2d 480, 483 (2006) ("Pursuant to Rule 5A:20(e), an appellant's brief must contain '[t]he principles of law, the argument, and the authorities relating to each question presented.'").

However, because I would affirm the trial court's denial of the motion to suppress, I must address Dorsey's contention that the trial court erred in finding the evidence sufficient to support his conviction for possession of cocaine with intent to distribute as an accommodation. Dorsey argues that "there was absolutely no evidence presented to the trial court that [he] intended to distribute the cocaine he possessed." I disagree.

When considering the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). Under this standard, this Court does not inquire as to whether it would have

found the appellant guilty, Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004), but only asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added).

"Where an offense consists of an act combined with a particular intent, proof of the intent is essential to the conviction." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). However, "[b]ecause direct proof of intent is often impossible, it must be shown by circumstantial evidence." Id. "'Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Ward v. Commonwealth, 47 Va. App. 733, 751, 627 S.E.2d 520, 529 (2006) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). Some of the factors

> that may indicate a defendant intended to distribute the illegal drugs in his possession include "the possession of a quantity [of drugs] greater than that ordinarily possessed for one's personal use," "the method of packaging of the controlled substance," the quantity and denomination of the cash possessed, "the absence of any paraphernalia suggestive of personal use," the presence of "equipment related to drug distribution," and the presence of firearms.

Emerson v. Commonwealth, 43 Va. App. 263, 278, 597 S.E.2d 242, 250 (2004) (citations omitted). The court may also consider the expert testimony of a police officer, familiar with narcotics, regarding the significance of the weight and packaging of drugs as it pertains to personal use. Askew v. Commonwealth, 40 Va. App. 104, 109, 578 S.E.2d 58, 61 (2003). And, the court may consider any statements made by the accused. Martin v. Commonwealth, 13 Va. App. 524, 527, 414 S.E.2d 401, 402 (1992).

In this case, contrary to Dorsey's assertion, there is more than enough evidence in the record to support Dorsey's conviction for possession of cocaine with intent to distribute as an

accommodation.  To begin with, Dorsey admitted that he intended to give some of the cocaine to some girls that he wanted to "party" with.  Moreover, Investigator Wayne testified that he found some digital scales "used to weigh drugs for the distribution of drugs" in Dorsey's home.  The amount of cocaine found on Dorsey's person was inconsistent with personal use.  And the money found in Dorsey's pocket was packaged in a manner consistent with the sale of drugs.  These facts, taken in their entirety, clearly support the trial court's conclusion that Dorsey intended to distribute the cocaine found in his possession.  Thus, I would hold that the trial court did not err in convicting Dorsey of possession of cocaine with the intent to distribute as an accommodation.

Because, in my view, the trial court did not err in refusing to suppress the evidence and because the evidence was sufficient to support Dorsey's convictions, I would affirm Dorsey's convictions.